Case number 23-7124. Calvert L. Potter, et al., at balance. Terry A. Alley, et al., v. District of Columbia. Mr. Munch, for the at balance. Ms. Resignoli, for the appellate. Good morning, and may it please the Court, I'm Lucas Munch on behalf of Plaintiffs Calvert Potter, Steve Chasen, Hassan Umrani, and Jasper Sterling. Plaintiffs are Muslim and Jewish first responders who wear facial hair in accordance with their faiths. After extensive litigation, the District Court entered a permanent injunction in 2007 that prohibits their employer, the D.C. Department of Fire and Emergency Medical Services, from enforcing against them a requirement that they may not have facial hair that comes between the sealing surface of the face piece of their masks and the face. Despite this permanent injunction, in March of 2020, the Department enforced against them that precise requirement, ostensibly due to the onset of the COVID-19 pandemic. The Department did not petition the District Court to modify the permanent injunction, nor did the Department consider less restrictive, viable alternatives. They simply disregarded the permanent injunction and plowed ahead. So we're supposed to look at this as to whether or not that permanent injunction was clear and unambiguous as to facial hair, and in the permanent injunction it mentions Special Order 20. So why wouldn't we say that the plain text does not suggest that we're talking about any facial policy, but specifically, instead, Special Order 20? Just to clarify, Your Honor, the permanent injunction prohibits enforcement of the facial hair provisions of Special Order 20, and if you do a side-by-side comparison of Special Order 20 and what the Department enforced, bullet to number 10, they're identical. The Department took the precise facial hair language from Special Order 20 and put it in the policy that they enforced against plaintiffs. So it's a clear violation of the permanent injunction because they enforced the precise provision that they were enjoined from enforcing. Well, those two, Special Order and the bulletin 10, had different purposes, right? I mean, Special Order 20 was referring to fumes and vapors and sprays, et cetera, versus bulletin 10 was in response to COVID, as you indicated. Yes, the Department's proper justifications for the two different policies differ, but that's immaterial on the question of contempt because the language of the permanent injunction is clear. The permanent injunction does not distinguish purposes. It does not say the Department is prohibited from enforcing Special Order 20, insofar as it offers a safety justification. It speaks categorically. It enjoins the Department from enforcing the facial hair provisions that I just discussed full stop. Do you think those facial hair provisions also include the penalty, right? So the penalty is different in the 2020 policy, right? It's not termination, you know, it's a different consequence of failing to shave. And it's not a requirement to shave. There is, you know, you're moved into an administrative position, which is a burden, but not the same type of burden as termination from your job. Two-part answer to your question, Your Honor. First, our position is that the enforcement mechanisms or penalty mechanisms are not part of the facial hair provisions of the order. So when the permanent injunction enjoins the Department from enforcing the facial hair provisions, the penalty provisions are separate and apart from that. Secondly. Are the penalty provisions relevant insofar as the injunction refers back to the memorandum order, finding a RFRA violation, and part of the analysis of the district court there was that the penalties were not the least restrictive means of addressing their safety concerns. And so when there's a different penalty in 2020, arguably the least restrictive means analysis would possibly be different. So this was going to be my second point to Your Honor, in that there really isn't a separate penalty in 2020 versus 2007. In 2007, what had happened during the pendency of that litigation is that plaintiffs had been put on administrative duty. And if Your Honor reads the permanent injunction language, it specifically orders the Department to return them from administrative duty to field duty, which is exactly what happened in 2020. Plaintiffs were placed on administrative duty for a year and a half. So the idea that there are separate penalties doesn't withstand scrutiny. The exact same thing happened. In 2007, they failed to comply with the facial hair orders. They were put on administrative duty. 2020, same thing. Failed to comply with Bullish Number 10 due to their fates. Placed on administrative duty. It's part and parcel. Is there any policy that would comply for facial hair? If the Department wanted to exercise facial hair, do you think any facial hair policy would be in violation of the injunction? The Department, in theory, is not prohibited from doing anything it wants with respect to facial hair, so long as it petitions the district court for a modification of the permanent injunction and goes through the analysis that RFRA requires, that is, a least restrictive means analysis. The Department has to make its case to the district court that its proffered policy is the least restrictive means of fulfilling a compelling interest, and that's what the Department did not do in this instance. Even in light of COVID, you would say? Even in light of COVID. COVID did not suspend individuals' rights under RFRA or any other law. The Federal Rule of Civil Procedure 60B provided the Department with an opportunity and they chose not to avail themselves of that opportunity, so they should be held in contempt. Judge Lee? Ms. Roth, can we just talk about what the district court, in fact, did in this case? I mean, so the district court says, plaintiffs may well have proven that the department violated a clear and unambiguous order by issuing and enforcing a policy, I mean, is that a finding that there was a violation of the injunction? I mean, it seems to be maybe that the district court is assuming there was a violation and then applying some sort of discretion to not find a violation. I think the best reading of that language is that he found that there was a violation, but I understand that reasonable minds can differ on that point. So if you say he did not find a violation, wouldn't the appropriate course for this court to be to revand for the district court to make such a finding? I mean, it seems that we have a number of cases suggesting that in the context of civil contempt where there are private rights at stake, a court doesn't have discretion not to make a finding of whether there was a violation of the injunction. And so if such a finding wasn't made, wouldn't the proper course be to remand? Absolutely, your honor, could absolutely remand to Judge Leon to make that finding. Alternatively, this court, if it wanted to, could make such a finding, as I've just explained. It's clear that there was a violation here, but a remand would absolutely be a proper course. And if we were to remand these arguments, does a district court have discretion to excuse the violation of, if a party is found in contempt? If the court has found a violation and in contempt, there is ample discretion. As we mentioned in our brief, there are several defenses to contempt in this circuit, substantial compliance and impossibility, neither of which apply, but they are viable defenses. But also there's significant discretion at the damages phase. The cases are clear that much of the discretion that a district court judge has actually occurs at the phase after contempt has been found, and the question is quantifying damages that are owed to the injured parties. And there's- Let me make sure I'm understanding what you're saying. I went through the cases to try and make sure I had a grasp of what we've held. I don't see any cases that say a district court has discretion in the sense that the district court says the action taken in violation of the injunction was reasonable and therefore I need not worry myself. I don't see that as an exception. If there's a violation of the injunction, my understanding is the fact that the violator acted reasonably is not a defense in the law. If there's an inability or an ambiguity in the original injunction, those are all reasonable defenses. But then there would be no violation because of those. But I don't see anything in the case law that says if the violator acted reasonably, that's a defense. That's absolutely right. Good faith is not a defense. This whole court has squarely held that in Food Lion. Acting reasonably is not a defense. Those are not categorical defenses to contempt that have been recognized in this circuit, and that is no excuse. I see I've gone into my rebuttal time, so I'm happy to continue to answer any of those questions. Do the plaintiffs here separately bring a new RFRA claim against the actions taken in 2020? In terms of a new lawsuit, no, they did not. Okay. They rested on the permanent injunction and did not bring a new original action. Mm-hm. Any other questions? Okay, we'll give you some time on rebuttal. Good morning, Your Honors, and may it please the court. I'm Dia Rochonario, and I'm here on behalf of the District of Columbia. In the March of 2020, the District and the D.C. Fire and Emergency Medical Services Department faced an unprecedented and imminent threat caused by the novel coronavirus that was rapidly spreading throughout the district. At the time, little was known about the virus. There was no cure, no effective treatment, certainly no vaccine. About 1% of the people who were infected died with case fatality rates that were much higher for vulnerable populations. But what was known at the time... So why did the district not go back for a modification of the injunction? Right. I mean, these are, you know, arguably important interests that have been recognized by various courts. Perhaps they could have had a modification to the injunction. Why not go back to the court for such a modification? Yes, Your Honor. Hindsight is a 20-20, and we certainly think, looking back now from today's position, that that would have been a more prudent and safer course of action. But there were two reasons for this. One was just the context of what was happening, how quickly the situation was changing, how unprecedented it was, the extraordinary circumstances. And the department was trying to figure out what was the best way to address this issue, what supplies it had, what methods would adequately protect its firefighters. And so even, I mean, we have many cases saying that in order to find contempt, you know, a court doesn't have to conclude that the, you know, party being held in contempt acted in bad faith. Yes. So, I mean, these arguments all seem to be about the good faith of the government. Well, it did have a belief that the 2007 injunction did not apply to these extraordinary circumstances. And that's because even though the injunction might be superficially clear if read in isolation of the context of the case, the claims raised, the evidence presented, the memorandum opinion, if you look at that context, you see that that injunction was addressing a very specific situation. And that was firefighters involved in remedying hazardous conditions, fogs, gases, things like that. But it didn't contemplate, the parties didn't contemplate, and the district courts didn't contemplate some sort of infectious disease that would spread rapidly, that would place almost any medical professional, such as the plaintiffs who regularly dealt with patients in the course of their work, at risk in all of their interactions in the field. And so the injunction didn't contemplate the specific circumstances of this case. And courts, you know, have said that when we look at clarity, we're not looking in some sort of general sense about whether the order is clear. We look at whether it's clearly prohibited the specific conduct. So the district court... I mean, there's an absolute clear violation. I understand the bind that the city was in. But the simple answer is the one that's been raised. You go back to the court. That's really not hard or tricky or onerous. You go back to the court. The circumstances have changed. We want to modify the injunction. But you're not really suggesting... I mean, I don't see this in the law. And if there is a case that says it, I'd like to know it. You must show, there must be a showing of bad faith. No, Your Honor, we're not. I don't see that in the law, nor did I see anything about reasonableness or good faith being a defense. That's not what I understand. And I went through this because it's a situation where the city has a compelling concern, totally legitimate, I understand. But the law is not really sympathetic here. The law is, if you violate... And it's a clear violation here. The district court's not saying otherwise. District court's not saying this wasn't real. This is an absolutely clear violation. It's the same provision that was in effect initially that's been violated subsequently. And so the answer normally is you go back to the court. You say we need a modification because we didn't anticipate this particular circumstance, even though we know there's a facial violation. What about... I mean, you've got laches. You've got acquiescence. You've got substantial client's arguments that can be made on remand, right? I... So, Your Honor, we disagree that this was a clear violation. And that's because we believe that you have to look at... What was unclear? Because you have to look at it in the context. So for example, in the Washington Baltimore newspaper guilt case that this court decided... Tell me why in this case it was not clear. Because that... I don't need another context for you to tell me. Looking at what was prohibited initially and then what happened subsequently, whether what happened subsequently violated what was prohibited initially. And to me, that looks as clear as anything I've seen recently. Your Honor, and this is because the initial context involved different types of harms. And at the time in the memorandum opinion, the district court had specifically contemplated looking at the plaintiff's ability to safely wear masks because of their facial hair in determining their assignments. And now, that might be a least restrictive means of accommodating them by moving them to a different position. And so given that broader context, the types of claims that were dealt with in that case, the district reasonably believed that that injunction did not apply. But I want to make another point. The district was enjoined from enforcing these facial hair provisions, which are basically identical in the 2020 provision. So I don't understand what context... Yeah, I don't understand... I don't understand what context prevents this from being a clear violation of the injunction. You're saying it's sad. That's a different argument, though. It is absolutely clear. It really is not a compelling argument to say that this isn't a clear violation. How we address this, the easy way to address it is you go back to the court. That's your burden. That's what you should have done, not you personally. No, I understand, Your Honor. And again, we do think that in hindsight, that would have been the more prudent course of action. I do want to address one point, though, which is that the plaintiffs were reassigned to their non-field operations right in the middle of March. So March 15th, 16th, and 17th. Two days later, on March 19th, the district's counsel and plaintiff's counsel had a phone call where the district explained that it had reassigned the plaintiffs and explained the reasons for doing so. And then they sent a letter the very next day memorializing that conversation. And then they've never heard anything from the plaintiffs again about their objections. Well, listen, the Lachey's acquiescence, or... Of course not. But if you're asking, you know, why did the district... But there's no findings on that. And that may be, those may be perfectly viable arguments, but they haven't been raised or addressed. You're right. They haven't been addressed. All we're asking you about is how can you possibly say there's some kind of context which suggests this isn't a clear violation. It was absolutely a clear violation. And just, so, I'm sorry, Your Honor, I'm just providing an explanation for why the district didn't seek to modify the injunction. And that's because they had had this conversation and they hadn't heard anything. Okay, no, I understand. I hear what you're saying, and we're over that. But now you've started talking about potential Lachey's and acquiescence, and those are things that maybe the district court would have to consider because it hasn't been considered yet. So, just taking a step back to context. So, in the Washington Baltimore Newspaper guilt case, that case involved an order that ordered the employer to arbitrate all grievances. That was the text of the order. But the employer didn't arbitrate certain grievances, holding the position that that order actually, right in context of the litigation, applied only to the type of employer discharges that had been at issue before the court. And when the civil contempt question was brought up, the district court agreed and this court affirmed, saying, you know, it's far more reasonable to conclude that that previous order only covered the grievances of the same character that were factually before the court at the time. That's not what the court here found. Sorry? That's not what the district court here said. The district court here didn't make a determination on whether the injunction was clear and unambiguous in terms of its application to this specific context. But I mean, the case you just cited is not this case. There isn't a finding where the district court, who issued the injunction in the first place, said, no, no, we all understood it didn't go that far. That's not this case. So facially, what we're looking at is a case that is dead on point. You had an injunction that covered X, and then you had a violation of X, and now what do we do is the question. And we think that this court can decide the question of what the previous injunction covered to De Novo. We would do it on our own motion? If it's a question of law, about what the previous injunction covered. If it's a question of the application of that law. Well, that surely would be something, if that's a viable issue, that surely would be something that a district court should decide in the first instance, especially because the district court issued the injunction. Well, we would not oppose a remand on that issue if the court decides that the district court should issue it in the first instance. No, you can, but that's not a reasonable position. But I did want to move briefly to the discretion aspect of this case. So the Seventh Circuit, in some of their cases, that is where the reasonably diligent and energetic standards come from. And I agree with the Court that there is some overlap between this first question of whether an order is ambiguous and the question of whether a contempt citation can be enforced when there is a reasonable belief about what that order covered. So I want to just draw the Court's attention to integrity with the Supreme Court specifically adopted an objective standard and said that if there is a reasonable interpretation of the order or of the law, and the party that is being sought to be kept in contempt of that order, acts because of that reasonable interpretation, you do not have sanctions or you could not find them in civil court. Is that a defense to contempt or is that really about the inquiry, the original inquiry about whether there was, whether the injunction was clear and unambiguous and the violation was proved by clear and convincing evidence? I think they overlap, Your Honor, because I feel like you could have an order where on its face, if you're not looking at the broader context, might appear to be clear and ambiguous, but where a party still has a reasonable interpretation of the order or the statute at issue. Right, so the Court has to make that first determination about whether the injunction is clear and unambiguous and whether there's been a clear violation. Clear violation, yeah. Yes, Your Honor. All right, it seems like a good issue on remand. Thank you, Your Honor. Anything further? No, thank you. Is there any further questions? Thank you. Just very briefly, Your Honor, it's a couple of points. First, to start off with the question of petitioning modification of the permanent injunction, I just wanted to emphasize the point that even in light of the pandemic, which was a sudden eventuality, the department chose not to go back to the district court at any point subsequent to March 2020. Even if Your Honors would want to say that March was a particularly tumultuous time, April 2020, May, June, July, and so on, they did not attempt to modify the permanent injunction in district court. Complete lack of diligence on their part. Secondly, I would like to... Cut him a little break. None of us knew what we were doing during the pandemic. No, that's absolutely correct, Your Honor, but the courts were still operating and there was... That's what you normally would expect, but it was a pretty chaotic time. They may not have even remembered it. And you didn't pursue it as a merits issue. A RIF or claim. Right, not as a standalone lawsuit. Correct, correct. Secondly, on the point of context and injunctions, it just bears emphasizing that in their briefs to the district court, the department emphasized that an injunction has to be understood based on the four corners of the injunction of the court's order, which is exactly the standard that plaintiffs have asked this court and the district court to apply. Looking at the permanent injunction on the four corners of the language, the violation is clear. For the department now to all of a sudden argue all of a sudden context is important. First of all, there's no case law to support the theory that that's how you interpret an injunction. But secondly, that's contrary to the position that they took in the district court and therefore waived and inappropriate at this stage. And finally, on the point of acquiescence and latches, that can be decided on remand. Plaintiffs objected in the first instance immediately when they were removed from field duty, so that defense has no merit either. But in light of what you stated, that if this were to be a remand with respect to question one, the district court should also look at what the department's defenses were to all of this as well. Yes, that would be appropriate. The department has raised defenses in the district court, which are still pending in the district court, which could be considered on remand for an analysis of damages. Thank you. Thank you.
judges: Rao; Childs; Edwards